***FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER***

**Electronically Filed
Supreme Court
SCWC-14-0001108
14-DEC-2017
08:44 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

MICKEY A. MADDOX,
Petitioner/Petitioner-Appellant,

vs.

STATE OF HAWAIʻI,
Respondent/Respondent-Appellee.

SCWC-14-0001108

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0001108; CAAP-14-0001109;
SPECIAL PROCEEDING PRISONER NO. 13-1-0004
(CRIMINAL NOS. 07-1-0139 and 09-1-0284))

DECEMBER 14, 2017

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

A defendant's constitutional right to effective assistance of counsel requires a defense attorney to proceed with competence and diligence throughout the proceedings of a case. This case presents the question of whether a post-

conviction petition raises colorable claims for relief when the petitioner alleges that his stated desire to appeal the order dismissing his case without prejudice was not effectuated by his trial counsel and further alleges that his counsel wholly abandoned him following the court's oral ruling of dismissal. Under the circumstances of this case, we hold that the petitioner has raised colorable claims for post-conviction relief based upon grounds of ineffective assistance of counsel and abandonment of representation by defense counsel.

## I.    PROCEDURAL HISTORY

### A.    Circuit Court Proceedings in the 2007 Case

On March 19, 2007, the State filed an indictment charging Mickey A. Maddox with attempted escape in the second degree and promoting prison contraband in the first degree (2007 case). Maddox was arraigned several months later on July 31, 2007 in the Circuit Court of the Second Circuit (circuit court), and he entered a plea of not guilty to both charges. The trial was delayed almost two years due to multiple motions to continue trial and motions to withdraw and substitute counsel. During much of this time, Maddox waived his rights to a speedy trial under the state and federal constitutions and Hawai'i Rules of

Penal Procedure (HRPP) Rule 48.[1]  On December 23, 2008, the circuit court granted Maddox's motion to substitute defense counsel, issuing an order that appointed "legal counsel for the Defendant at all stages of proceedings, including appeal, if any," pursuant to Hawaii Revised Statutes (HRS) § 802-5(a) (2010).[2]  On April 8, 2009, Maddox's counsel (hereafter "trial counsel") filed a motion to dismiss the indictment asserting violation of Maddox's right to a speedy trial under the federal and state constitutions and HRPP Rule 48.[3]  A hearing was held on the motion to dismiss on May 14-15, 2009.[4]  The circuit court found that after taking into account excluded periods, trial was scheduled to commence 200 days after indictment.  The court

---

[1]     HRPP Rule 48(b) (2000) provides in relevant part as follows:

> Except in the case of traffic offenses that are not punishable by imprisonment, the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months.

[2]     HRS § 802-5(a) states in relevant part as follows:

> [W]hen it shall appear to a judge that a person requesting the appointment of counsel satisfies the requirements of this chapter, the judge shall appoint counsel to represent the person at all stages of the proceedings, including appeal, if any.  If conflicting interests exist, or if the interests of justice require, the court may appoint private counsel[.]

[3]     The motion to dismiss, although filed by trial counsel, was a handwritten document prepared by Maddox.  The motion also raised other grounds not relevant to this appeal.

[4]     The Honorable Joseph E. Cardoza presided over the circuit court proceedings related to the 2007 case.

3

concluded that this delay violated HRPP Rule 48, and after applying the factors set forth in State v. Estencion, 63 Hawai'i 264, 269, 625 P.2d 1040, 1044 (1981),[5] the court orally ruled that the indictment should be dismissed without prejudice.

On May 29, 2009, two weeks after the 2007 case's oral dismissal, Maddox was re-indicted on charges identical to those that had been dismissed (2009 case). That same day, Maddox filed a pro-se "Second Notice of Appeal" of the 2007 case,[6] along with a "Motion for New Counsel" and a "Motion for Assistance of Counsel on Appeal." In the motions, Maddox informed the circuit court that he intended to appeal the order dismissing the 2007 case without prejudice and asked for new counsel because he was claiming ineffective assistance of counsel against his trial counsel in the 2007 case. Maddox subsequently withdrew the notice of appeal on June 3, 2009, because he had moved to dismiss the 2009 case with prejudice the day before. Maddox

---

[5]    The court, relying on Estencion, stated "in determining whether to dismiss a case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense, the facts and the circumstances of the case that led to the dismissal, and the impact of a reprosecution on the administration of HRPP, Rule 48, and the administration of justice."

[6]    In his "Second Notice of Appeal," Maddox stated that the "[f]irst notice of appeal was given orally at [the] hearing on May 15, 2009 by the Defendant-Appellant[.]" A transcript of the May 15, 2009 proceeding was not included in the record on appeal, and the electronic record of the transcript appears to have been corrupted.

explained that his appeal would be moot if the circuit court granted his motion. Later, on June 9, 2009, Maddox filed a pro-se "Third Notice of Appeal," again informing the court that he was appealing the dismissal without prejudice of the 2007 case.[7]

The record does not reflect a motion by trial counsel to withdraw, nor does the record indicate that trial counsel continued to act as counsel for Maddox after the May 15, 2009 hearing. Other than trial counsel's motion for compensation in excess of the statutory maximum for court-appointed counsel under HRS § 802-5, filed July 15, 2009, all subsequent filings pertaining to the 2007 case were handwritten, pro se submissions by Maddox.[8]

On August 25, 2009, the Intermediate Court of Appeals (ICA) dismissed Maddox's appeal of the 2007 case for lack of appellate jurisdiction. In its order of dismissal, the ICA stated, "[f]or reasons that are not clear, the circuit court has not yet entered a written order of dismissal without prejudice."

---

[7] The record does not show that the circuit court ever ruled on the pro se motions for new counsel and assistance of counsel on appeal.

[8] In addition to Maddox's "Motion for New Counsel," "Motion for Assistance of Counsel on Appeal," and "'Second' Notice of Appeal," filed on May 29, 2009, Maddox's other pro se filings included the following: "Temporary Withdrawal of Notice of Appeal"; "(Third) Notice of Appeal"; "Motion to Dismiss"; "Addendum to Motion to Dismiss"; "Affidavit in Support of Motion to Dismiss"; and "Motion to Release and Discharge from Custody; Dismiss With Prejudice."

The ICA concluded that even if an order had been entered, it would not be appealable under HRS § 641-11 (2010) because no sentence had been imposed.[9] On January 7, 2010, almost eight months after the 2007 case was orally dismissed, the circuit court entered its order dismissing the 2007 case without prejudice based on the HRPP Rule 48 violation.[10]

### B.    Circuit Court Proceedings in the 2009 Case

As stated, Maddox was re-indicted in 2009 on the same charges dismissed in the 2007 case. The Office of the Public Defender, which was initially appointed to represent Maddox in the 2009 case, made a motion to withdraw as counsel. At the scheduled arraignment on June 4, 2009, the circuit court also heard the motion to withdraw as counsel, and the court asked Maddox if trial counsel in the 2007 case was still representing

---

[9]     HRS § 641-11 provides the following:

> Any party aggrieved by the judgment of a circuit court in a criminal matter may appeal to the intermediate appellate court, subject to chapter 602, in the manner and within the time provided by the rules of court. The sentence of the court in a criminal case shall be the judgment. All appeals shall be filed with the clerk of the supreme court and shall be subject to one filing fee.

[10]     In its January 7, 2010 order dismissing the 2007 case without prejudice, the circuit court stated in a footnote that the court had instructed the State to prepare an appropriate order at the time of the oral ruling on May 15, 2009, but no proposed order was ever submitted despite follow-up requests from the court staff.

him.[11]  Maddox replied that he would be claiming ineffective assistance of counsel because he had to "put in all [his] own motions before," asserting also that trial counsel had lied to him.  Subsequently, on June 28, 2010, pursuant to a plea agreement with the State, Maddox entered no contest pleas to both counts in the 2009 case and to a separate charge of terroristic threatening in the second degree.  The cases referenced in the plea agreement form are the 2009 case and the charge of terroristic threatening.  The plea agreement and plea form did not reference the 2007 case.

Consistent with the plea agreement, Maddox was sentenced on August 27, 2010, to probation for five years in the 2009 case and one year probation for the terroristic threatening offense, terms to be served concurrently.  Maddox was later arrested for probation violations.  At a probation revocation hearing on February 19, 2013, Maddox agreed to a second plea agreement in the 2009 case, in which he admitted to violating the terms and conditions of his probation and entered no contest pleas in two other unrelated cases that were pending.  Pursuant to the second plea agreement, Maddox was sentenced to concurrent terms of imprisonment of ten years and five years in the 2009

_____

[11]     The Honorable Richard T. Bissen, Jr., presided over the proceedings related to the 2009 case.

case and concurrent one-year prison terms for the unrelated offenses.

### C.    Rule 40 Petition

On April 26, 2013, Maddox filed a Petition for Post-Conviction Relief pursuant to HRPP Rule 40 (Petition) in which he set forth thirteen grounds for relief.[12]  In the Petition, Maddox asserts, inter alia, that he was denied effective counsel on appeal in the 2007 case and that his trial attorney had "abandoned all representation of his client and left him without any representation," despite Maddox being ordered to remain in custody.  In particular, Maddox states that he gave oral notice of appeal following the circuit court's oral dismissal of the 2007 case on May 15, 2009.[13]  Maddox also asserts in his Petition that after the hearing but while still in court, his trial counsel told him that "he could not represent [him] on appeal[], nor could he represent him in any manner since the case had been dismissed and his representation terminated at that time."

On August 21, 2014, the circuit court entered its order denying the Petition without a hearing (Order Denying

---

[12]    Maddox's Petition references, in its caption and content, both the 2007 and 2009 cases.

[13]    As stated, the record contains no hearing transcript for May 15, 2009.  See supra note 6.

Petition). The court concluded that the grounds for relief were previously ruled upon in the 2009 case, and that the substance of the issues were also raised by Maddox prior to his entering into a plea agreement with the prosecution in the 2009 case. The court further found that "[a]lthough several attorneys have withdrawn as counsel for Petitioner in [the 2007 and 2009 cases], Petitioner has been represented by counsel throughout the proceedings in said cases." Because there was still a hearing pending in the 2009 case related to a motion for reconsideration of sentencing regarding credit for time served, the circuit court denied the Petition without prejudice.

### D. Appellate Proceedings

On September 8, 2014, Maddox filed a notice of appeal from the circuit court's denial of the Petition, asserting thirteen questions on appeal and seventeen statements of error.[14] On March 31, 2016, the ICA entered its Summary Disposition Order in which it affirmed the circuit court's Order Denying Petition.[15] The ICA in its ruling did not address Maddox's claims individually, stating that upon "a thorough review of the

---

[14] In its Summary Disposition Order affirming the circuit court's denial of Maddox's Petition, the Intermediate Court of Appeals rephrased Maddox's thirteen "Questions on Appeal" and seventeen "Statements of Error" in a combined and renumbered list of thirty points of error.

[15] The ICA's Summary Disposition Order can be found at Maddox v. State, No. CAAP-14-0001108, 2016 WL 1600699 (Haw. App. Mar. 31, 2016).

record, which include[d] the records in [the 2007 case] and [the 2009 case]," post-conviction relief was not available to Maddox because all the claims for relief raised by Maddox in his Petition "have been previously ruled upon or have been waived."

Maddox filed a pro se application for a writ of certiorari setting forth fourteen questions for review. Maddox asserts that he was "wrongfully denied initial appeal" in the 2007 case, and that he was denied his right to counsel on appeal as he was abandoned by trial counsel.[16] These claims for relief are encompassed by ground G of Maddox's Petition, which asserts that trial counsel "failed in his duty of representing his client" and "abandoned all representation of his client and left him without any representation."[17] We address the asserted

---

[16] The other thirteen questions presented by Maddox on certiorari are addressed infra, note 34.

[17] Among the points of error identified by the ICA that Maddox raised in his appeal were the following:

> (2) Maddox was entitled to assistance of counsel on his appeal in [the 2007 case];
>
> (3) the circuit court committed structural error in not providing Maddox with assistance of counsel on his appeal in [the 2007 case];
>
> (7) Maddox's attorney was ineffective;
>
> (12) Maddox was entitled to assistance of counsel until the termination of [the 2007 case];
>
> (21) Maddox's counsel was ineffective, committed illegal acts and lied to Maddox in violation of the Sixth Amendment

(continued . . .)

claims as follows: (1) Maddox did not receive effective assistance of counsel following the court's oral dismissal without prejudice of the 2007 case; and (2) Maddox was abandoned by trial counsel prior to the termination of the 2007 case.

## II.  STANDARD OF REVIEW

Whether the "trial court erred in denying a Rule 40 petition without a hearing based on no showing of a colorable claim is reviewed de novo; thus, the right/wrong standard of review is applicable."  Dan v. State, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994) (holding that to determine whether a Rule 40 petition raises a colorable claim, "the appellate court steps into the trial court's position, reviews the same trial record, and redecides the issue").

## III. DISCUSSION

HRPP Rule 40(f) (2006) provides that a court must grant an evidentiary hearing on a petition for post-conviction relief if a petitioner "alleges facts that if proven would entitle the petitioner to relief."  Thus, in reviewing on appeal the denial of a Rule 40 petition without a hearing, the question is whether the record indicates that the petitioner made "a

---

(. . . continued)

> of the United States Constitution and Article I, section 14
> of the Hawai'i Constitution[.]

showing of a colorable claim as to require a hearing before the lower court." Dan v. State, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994).

Accordingly, we evaluate Maddox's claims to determine whether they present a colorable claim for post-conviction relief such that a Rule 40 hearing was required.  We first address Maddox's contention that he did not receive effective assistance of counsel with regard to the appeal of the 2007 case.  Next, we consider Maddox's claim that he was entitled to assistance of counsel until his case was terminated.

### A. Ineffective Assistance of Counsel on Appeal

Article I, section 14 of the Hawai'i Constitution guarantees a defendant in a criminal prosecution the right "to have the assistance of counsel for the accused's defense."  Haw. Const. art. I, § 14.  This court regards a defendant's constitutional right to the assistance of counsel as a "fundamental component" of our criminal justice system.  State v. Smith, 68 Haw. 304, 309, 712 P.2d 496, 499 (1986).  It is well settled that "[t]he constitutional right to the assistance of counsel in a criminal case is satisfied only when such assistance is 'effective.'"  State v. Kahalewai, 54 Haw. 28, 30, 501 P.2d 977, 979 (1972); accord State v. Tetu, 139 Hawai'i 207,

215, 386 P.3d 844, 852 (2016); State v. Pacheco, 96 Hawai'i 83, 93, 26 P.3d 572, 582 (2001).

This court set forth the standard by which we evaluate claims of ineffective assistance of counsel under the Hawai'i Constitution in State v. Antone, 62 Haw. 346, 348-49, 615 P.2d 101, 104 (1980). "General claims of ineffectiveness are insufficient" to establish that the assistance a defendant received was constitutionally ineffective. Dan, 76 Hawai'i at 427, 879 P.2d at 532 (quoting Briones v. State, 74 Haw. 442, 462-63, 848 P.2d 966, 976 (1993)). Rather, a defendant must show: (1) "specific errors or omissions of defense counsel reflecting counsel's lack of skill, judgment[,] or diligence"; and that (2) "those errors or omissions resulted in the withdrawal or substantial impairment of a potentially meritorious defense." Antone, 62 Haw. at 348-49, 615 P.2d at 104 (internal citations omitted). Thus, to be entitled to a Rule 40 hearing on the basis of ineffective assistance of counsel, Maddox must first allege facts identifying a specific error or wrongful omission made by his counsel.

Maddox asserts that, notwithstanding his repeated communications to trial counsel regarding his desire to appeal, trial counsel informed Maddox at the May 14-15 hearing that counsel's representation of Maddox terminated when the court

orally dismissed the 2007 case without prejudice.  However, our statutes, precedents, and court rules, as well as widely accepted legal standards, all make clear that trial counsel had an ongoing obligation to Maddox that included pursuing an appeal if Maddox chose this course.

Hawai'i statutorily guarantees every defendant in a criminal case aggrieved by a circuit court judgment or final order the right to appeal.  HRS § 641-11 (2016); State v. Nicol, 140 Hawai'i 482, 491, 403 P.3d 259, 266 (2017).  When such an appeal of right exists, the equal protection and due process clauses of the Hawai'i and United States Constitutions grant the defendant a right to effective counsel during the appeal. Briones, 74 Haw. at 460, 848 P.2d at 975; Douglas v. California, 372 U.S. 353 (1963).  This ongoing right to counsel is reflected in Hawai'i statutory law, which is unambiguous regarding the extent of a court-appointed counsel's responsibility to an indigent client:

> [W]hen it shall appear to a judge that a person requesting the appointment of counsel satisfies the requirements of this chapter, the judge shall appoint counsel to represent the person at all stages of the proceedings, including appeal, if any. If conflicting interests exist, or if the interests of justice require, the court may appoint private counsel[.]

HRS § 802-5(a) (2010) (emphasis added).[18]

The right to counsel on appeal encompasses not only the appeal itself, but also the procedural steps necessary to bring about the appeal. "An indigent criminal defendant is entitled, on his first appeal, to court-appointed counsel who may not deprive him of his appeal by electing to forego compliance with procedural rules." State v. Erwin, 57 Haw. 268, 270, 554 P.2d 236, 238 (1976) (emphasis added) (citing Entsminger v. Iowa, 386 U.S. 748 (1966)). "It has been said that failure by appointed counsel to 'commence the simple steps for appeal is a blatant denial of due process.'" Id. (quoting Blanchard v. Brewer, 429 F.2d 89, 90 (8th Cir. 1970)).

HRS § 802-5(a) therefore imposes a duty on court-appointed counsel to consult with a defendant following a final order or judgment to determine whether the defendant wishes to appeal, as well as a duty to diligently fulfill the procedural requirements of appeal if the defendant elects to appeal. These

---

[18] The circuit court's order appointing trial counsel to represent Maddox in the 2007 case was equally clear as to the extent of trial counsel's responsibility to Maddox: "IT IS FURTHER ORDERED that [trial counsel] is appointed legal counsel for the Defendant at all stages of proceedings, including appeal, if any." (Emphasis added.)

15

principles are also reflected in the American Bar Association

(ABA) Standards, which we have often looked to for "guidance"

regarding the duties of officers of the court, including for

"determining which decisions must be made by the defendant and

which decisions are the province of counsel."  State v. Richie,

88 Hawai'i 19, 39, 960 P.2d 1227, 1247 (1998).[19]  The ABA

Standards state that

> defense counsel should explain to the defendant the meaning
> and consequences of the court's judgment and defendant's
> right of appeal.  Defense counsel should give the defendant
> his or her professional judgment as to whether there are
> meritorious grounds for appeal and as to the probable
> results of an appeal.  Defense counsel should also explain
> to the defendant the advantages and disadvantages of an
> appeal.

ABA Standards for Criminal Justice: Prosecution and Defense

Function, Standard 4-8.2(a) (3d ed. 1993) [hereinafter ABA

Defense Function Standards].  The duty of defense counsel in a

criminal case to explain to the defendant the meaning and

consequences of the court's judgment and the client's right to

---

[19]     See also, e.g., State v. Kim, 140 Hawai'i 421, 431-32, 402 P.3d
497, 507-08 (2017) (citing ABA Standards for Criminal Justice: Special
Functions of the Trial Judge (3d ed. 2000) in providing guidance regarding a
trial judge's responsibility to safeguard the rights of the accused); Tetu,
139 Hawai'i at 215, 386 P.3d at 852 (referencing ABA Criminal Justice
Standards for the Defense Function (4th ed. 2015) as part of this court's
analysis that a defendant's right to access a crime scene inheres within the
constitutional right to effective assistance of counsel); State v. Rogan, 91
Hawai'i 405, 412, 984 P.2d 1231, 1238 (1999) (quoting ABA Standards for
Criminal Justice: Prosecution and Defense Function (3d ed. 1993) to support
the proposition that "[t]he duty of the prosecutor is to seek justice, not
merely to convict" (alteration in original)).

16

appeal, as set forth in the ABA Standards, applies equally to appointed or retained counsel.

The ABA Defense Function Standards further clarify that "[t]he decision whether to appeal must be the defendant's own choice"--and not that of counsel. Id.; see also ABA Defense Function Standards, Standard 4-5.2(v) (listing "whether to appeal" among the decisions that are to be made "by the accused after full consultation with counsel"). Defense counsel should take "whatever steps are necessary" to protect the client's right to appeal, even "if the client decides to proceed with the appeal against the advice of counsel." ABA Defense Function Standards, Standards 4-8.2(b), 4-8.3(c). Counsel should be "diligent in perfecting appeals and expediting their prompt submission" to the appropriate appellate court. ABA Defense Function Standards, Standard 4-8.4(a).

The Fourth Edition of the ABA Criminal Justice Standards for the Defense Function, released since the circuit court proceedings in the 2007 case, reaffirms the responsibility of defense counsel in a criminal case to consult with a client regarding an appeal and to undertake the procedural steps to effectuate the appeal upon the client's request. See ABA Criminal Justice Standards for the Defense Function, Standard 4-

9.1 (4th ed. 2015).[20]  We now specifically adopt these requirements as a component of effective assistance of counsel under article I, section 14 and due process under article I, section 5 of the Hawai'i Constitution.

In addition, appointed counsel has a duty to pursue an appeal if a defendant in a criminal case so chooses even when counsel believes the appeal is wholly frivolous.  In In re Attorney's Fees of Mohr, 97 Hawai'i 1, 32 P.3d 647 (2001), this court overruled Carvalho v. State, 81 Hawai'i 185, 192, 914 P.2d 1378, 1385 (App. 1996), in which the ICA had intimated that appointed counsel could avoid prosecuting a meritless appeal by filing so-called "Anders briefs."[21]  We rejected the practice, instead enunciating the "better policy" of "requir[ing] counsel to remain an advocate for the client."  Mohr, 97 Hawai'i at 7, 32 P.3d at 653.

---

[20]     We note that, although both versions of the ABA Standards reference court judgments, the Standards would apply with equal force to final orders, which are appealable under our precedent.  See Nicol, 140 Hawai'i at 491, 403 P.3d at 266.

[21]     In Anders v. California, the United States Supreme Court held that jurisdictions may permit appointed counsel to request permission to withdraw when he or she finds an appeal to be "wholly frivolous."  386 U.S. 738, 744 (1967).  Such a request must be accompanied by "a brief referring to anything in the record that might arguably support the appeal," leaving it to the court, rather than counsel, to determine if a case is "wholly frivolous." Id.  In jurisdictions that permit this practice, such briefs are frequently referred to as "Anders briefs."

Lastly, it is noted that a defense attorney, "in common with all members of the bar, is subject to standards of conduct stated in statutes, rules, decisions of courts, and codes, canons or other standards of professional conduct." ABA Defense Function Standards, Standard 4-1.2(e).[22] In keeping with that directive, trial counsel in this case was subject to the Hawai'i Rules of Professional Conduct (HRPC),[23] which state that "[a] lawyer should pursue a matter on behalf of a client despite opposition, obstruction, or personal inconvenience to the lawyer[.]" HRPC Rule 1.3 cmt. [1].

Given that the clear weight of authority supports an obligation on the part of defense counsel to take the procedural steps necessary to pursue an appeal when requested by the defendant, a failure by Maddox's trial counsel to do so would amount to an "omission[] of defense counsel reflecting counsel's lack of skill, judgment[,] or diligence."[24] Antone, 62 Haw. at

---

[22] See also ABA Criminal Justice Standards for the Defense Function, Standard 4-1.1(b) (4th ed. 2015) ("[A] lawyer should always read and comply with the rules of professional conduct and other authorities that are binding in the specific jurisdiction.").

[23] An order amending and reissuing the HRPC was adopted and promulgated by this court in 2013, becoming effective on January 1, 2014. All portions of the HRPC cited herein remain substantively the same as the versions in effect during the circuit court proceedings in the 2007 case.

[24] Although defense counsel must consult with the client and ensure steps are taken to preserve the client's right to appeal, we do not suggest that counsel at trial is required to continue representation as appellate counsel. See ABA Criminal Justice Standards for the Defense Function,

(continued . . .)

348-49, 615 P.2d at 104. However, to be entitled to a Rule 40 hearing on the basis of ineffective assistance of counsel, Maddox must also allege facts demonstrating that the omission "resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." Id.

When evaluating whether defense counsel's omission deprived a defendant of a potentially meritorious defense, we consider "the possible, rather than the probable, effect" of the error. Wilton v. State, 116 Hawai'i 106, 119, 170 P.3d 357, 370 (2007) (quoting Briones, 74 Haw. at 464, 848 P.2d at 977). "Accordingly, no showing of actual prejudice is required to prove ineffective assistance of counsel." Id. (internal quotation marks omitted). We therefore do not inquire into whether Maddox's appeal would succeed on the merits, but instead we address whether trial counsel's failure to fulfill the steps necessary to pursue an appeal possibly impaired Maddox's defense.

Notwithstanding trial counsel's failure to provide assistance, Maddox filed his own handwritten notice of appeal following the circuit court's oral dismissal of the 2007 case

---

(. . . continued)

Standard 4-9.1(d) (4th ed. 2015). However, formal withdrawal procedures are required to be undertaken in penal proceedings to obtain the approval of the court. See HRPP Rule 57 (2000).

without prejudice.  The ICA on August 25, 2009, dismissed Maddox's notice of appeal in part because no order dismissing the 2007 case without prejudice was entered by the circuit court prior to or during the pendency of the appeal.[25]  The order was not filed until January 7, 2010--nearly eight months after the court's oral dismissal.[26]  Hawai'i Rules of Appellate Procedure (HRAP) require the filing of a notice of appeal "within 30 days after entry of the judgment or order appealed from."  HRAP Rule 4(b)(1) (2015).  Thus, a notice of appeal from the order dismissing the 2007 case would have been duly filed after the entry of the order on January 7, 2010.  Yet no new notice of appeal was filed in the 2007 case following the filing of the circuit court's order.

With the assistance of counsel, Maddox might have been able to urge the circuit court to issue an appealable order more expeditiously, or at minimum, timely file a notice of appeal

---

[25]     It is noted that the ICA's alternative holding--that it lacked appellate jurisdiction over the appeal because a circuit court dismissal without prejudice of criminal charges lacks a sentence--was incorrect.  This court recently held in Nicol that under HRS § 641-11, a defendant may appeal from an order of the circuit court dismissing proceedings without prejudice. 140 Hawai'i at 491, 403 P.3d at 266.  We determined in Nicol that the legislative history of § 641-11 and our jurisdiction's caselaw indicate that the finality of the circuit court's decision, rather than simply whether a "sentence" was rendered, is the determinative factor in whether jurisdiction exists over the appeal.  Id.

[26]     As explained supra, note 10, the circuit court's order stated that the court made follow-up requests to the State for the submission of proposed findings of fact, conclusions of law, and order.  Apparently, when none were forthcoming, the court entered its own.

following the entry of the order dismissing the 2007 case.  The failure to fulfill procedural requirements resulted in the loss of Maddox's right to appeal the circuit court's order.  If the facts are as Maddox alleges, this forfeiture can be attributed to trial counsel's wrongful refusal or omission to undertake the steps to initiate an appeal.

Although we have long held that courts may permit an untimely appeal when "defense counsel has inexcusably or ineffectively failed to pursue a defendant's appeal from a criminal conviction," State v. Knight, 80 Hawai'i 318, 323, 909 P.2d 1133, 1138 (1996), this court has not before addressed the complete denial of a criminal appeal as it relates to an ineffective assistance of counsel claim under the Antone framework.  Cf. In re RGB, 123 Hawai'i 1, 54, 229 P.3d 1066, 1119 (2010) (Acoba, J., dissenting) (arguing that counsel's wrongful omission that resulted in forfeiture of appeal in a civil case involving termination of parental rights warranted post-judgment relief under Antone).  However, this court has definitively stated that "failure by appointed counsel 'to commence the simple steps for appeal is a blatant denial of due process.'" Erwin, 57 Haw. at 270, 554 P.2d at 238 (quoting Blanchard, 429 F.2d at 90).  A primary reason that a defendant is guaranteed effective assistance of counsel is to ensure that the defendant

is not denied due process.  Tetu, 139 Hawai'i at 219, 386 P.3d at 856 ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the [s]ixth [a]mendment, including the [c]ounsel [c]lause.").  Consequently, we hold that when a defendant is denied an appeal because of a failure or omission of defense counsel, a defendant need not demonstrate any additional possibility of impairment to establish that counsel was ineffective under article I, sections 5 and 14 of the Hawai'i Constitution.

Maddox has thus alleged facts demonstrating a wrongful omission by trial counsel that resulted in the substantial impairment of a potentially meritorious defense, which would establish that his trial counsel provided ineffective assistance under the Hawai'i Constitution.[27]  Because these facts, if true, would entitle Maddox to pursue an appeal of the order dismissing the 2007 case without prejudice, he has raised a colorable claim for post-conviction relief and is entitled to an evidentiary

---

[27]    Because we find that Maddox has alleged facts establishing a colorable claim for ineffective assistance of counsel under the Hawai'i Constitution, we do not address whether the facts would also give rise to a federal ineffective assistance of counsel claim.  We note, however, that the United States Supreme Court has held that the failure of counsel to institute an appeal when so instructed or to consult with a defendant who has indicated interest in appealing amounts to "professionally unreasonable" behavior.  Roe v. Flores-Ortega, 528 U.S. 470, 477, 480 (2000).

hearing on ground G of his Petition as it relates to his ineffective assistance claim.

## B. Abandonment by Defense Counsel

Maddox also contends that he was entitled to assistance of counsel until the termination of the 2007 case. The United States Supreme Court has recognized an "essential difference between a claim of attorney error, however egregious, and a claim that an attorney had essentially abandoned his client." Maples v. Thomas, 565 U.S. 266, 282 (2012) (internal citations omitted). Federal courts consider a trial "unfair if the accused is denied counsel at a critical stage of his trial," and "[n]o specific showing of prejudice [is] required" to establish a constitutional defect. United States v. Cronic, 466 U.S. 648, 659 (1984). The Maples Court thus characterized an attorney's abandonment of a client as an "extraordinary circumstance beyond [the client's] control" that potentially entitles the client to post-conviction relief. 565 U.S. at 282-83. Courts of last resort in other jurisdictions have likewise addressed the issue of abandonment by counsel under varying circumstances, consistently regarding it as grounds for relief. See, e.g., Commonwealth v. Bennett, 593 Pa. 382, 399, (2007) (characterizing abandonment by counsel as a dereliction of "minimum norms" of counsel's performance and the "functional equivalent of having no counsel at all," entitling a petitioner

to remand for hearing of post-conviction relief claims); Amco Builders & Developers, Inc. v. Team Ace Joint Venture, 469 Mich. 90, 96 (2003) (holding abandonment by counsel in a civil action to be sufficient ground for setting aside a default or default judgment); In re Sanders, 21 Cal. 4th 697, 708-09 (1999) (considering abandonment by counsel as good cause for delayed presentation of habeas corpus claims and equating abandonment by counsel with a complete lack of representation); People v. Berger, 9 N.Y.2d 692, 693 (1961) (reversing Appellate Division's denial of coram nobis petition and remitting for trial of petitioner's allegation of abandonment by counsel).

Under Hawai'i law, withdrawal of counsel in penal proceedings is governed by HRPP Rule 57, which states as follows:

> Withdrawal of counsel shall require the approval of the court and shall be subject to Rule 1.16 of the Hawai'i Rules of Professional Conduct.  Where the defendant is or may be indigent, substitution of counsel shall comply with the procedure established in Hawai'i Revised Statutes, chapter 802.  Unless otherwise ordered, withdrawal of counsel shall not become effective until substitute counsel appears or is appointed, the defendant appears pro se or the defendant is deemed to have waived counsel.

HRPP Rule 57 (2000).  Unless the attorney-client relationship is terminated by permission of the tribunal pursuant to this rule, the attorney is obligated to "carry through to conclusion all matters undertaken by the client," the relationship terminating only when the matter has been resolved.  HRPC Rule 1.3 cmt. [4];

HRPC Rule 1.16(c).[28] And even when the relationship is terminated by a court's grant of a motion to withdraw, an attorney is expected to take steps to protect the client's interests, such as giving reasonable notice to the client and allowing time for employment of other counsel. HRPC Rule 1.16(d).[29]

Although our jurisdiction's test for ineffective assistance of counsel is well settled, this court has not directly addressed the issue of abandonment by counsel. We now hold that, when appointed counsel wholly abandons professional duties to his or her client for the substantial duration of a critical stage of the proceeding without timely following the procedural steps to properly withdraw from representation, prejudice is presumed because it is "functional[ly] equivalent [to] having no counsel at all." Bennett, 593 Pa. at 399.

---

[28]     HRPC Rule 1.16(c) states in full, "A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation."

[29]     HRPC Rule 1.16(d) states as follows:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred.

As discussed, we have held that the "failure by appointed counsel 'to commence the simple steps for appeal is a blatant denial of due process.'" State v. Erwin, 57 Haw. 268, 269, 554 P.2d 236, 238 (1976) (quoting Blanchard v. Brewer, 429 F.2d 89, 90 (8th Cir. 1970)).  It logically follows that the steps to effectuate an appeal constitute a critical stage in the proceeding during which a defendant is entitled to counsel.  An appointed counsel's wrongful abandonment of professional duties to a defendant for the substantial duration of this critical stage would therefore give rise to a presumption of prejudice.

Here, there is nothing in the record to indicate that trial counsel filed a motion to withdraw as counsel pursuant to HRPP Rule 57 following the oral dismissal without prejudice of the 2007 case.  And, as noted above, all defense filings relating to the 2007 case following the court's oral dismissal without prejudice were handwritten, pro se motions, with the sole exception of trial counsel's motion for compensation in excess of the statutory maximum as allowed by HRS § 802-5(b).[30] Trial counsel's alleged statement to Maddox following the May 14-15, 2009 hearing that trial counsel could not continue to represent Maddox on appeal or in any manner also represents a

---

[30]    Trial counsel's motion for additional fees was denied by the circuit court.

rejection by trial counsel of the obligation to represent Maddox through "all stages of proceedings, including appeal, if any[,]" as mandated by HRS § 802-5(a)[31] and the circuit court's order appointing trial counsel.[32]

Taken as a whole, these alleged facts indicate that trial counsel effectively abandoned Maddox for the substantial duration or the entirety of a critical stage in the 2007 case. We accordingly presume that this abandonment would be prejudicial.[33] Because these facts, if true, would entitle Maddox to proceed with his appeal at this juncture, he has

_____

[31] As previously noted, HRS § 802-5(a) provides in relevant part as follows: "when it shall appear to a judge that a person requesting the appointment of counsel satisfies the requirements of this chapter, the judge shall appoint counsel to represent the person at all stages of the proceedings, including appeal, if any." (Emphasis added.)

[32] As discussed supra, note 18, the circuit court's December 22, 2008 order stated, "IT IS FURTHER ORDERED that [trial counsel] is appointed legal counsel for the Defendant at all stages of proceedings, including appeal, if any."

Although the circumstances of this case involve appointed counsel, to which HRS § 802-5(a) and the order of appointment apply, we note that HRPP Rule 57 and HRPC requirements as to terminating representation would be equally applicable to retained counsel in penal proceedings.

[33] The circuit court's Order Denying Petition includes the following Finding of Fact: "67. Although several attorneys have withdrawn as counsel for Petitioner in [the 2007 case] and [the 2009 case], Petitioner has been represented by counsel throughout the proceedings in said cases." The circuit court's belief that Maddox was represented "throughout the proceedings" is likely due to the fact that no motion to withdraw as counsel was filed by trial counsel following the May 14-15, 2009 hearing. The record, however, clearly indicates that Maddox was seeking to pursue appellate relief in the 2007 case, but it appears that he did not receive the assistance of court-appointed counsel. To the extent that the circuit court's finding is contrary to our holding that Maddox alleged facts that would establish a colorable claim of abandonment by counsel, it is clearly erroneous. See Dan, 76 Hawai'i at 428, 879 P.2d at 533.

raised a colorable claim for relief and is entitled to an evidentiary hearing on ground G of his Petition as it relates to his claim of abandonment by defense counsel.[34]

## IV. CONCLUSION

Maddox's allegation that trial counsel failed to take the procedural steps to file an appeal of the 2007 case set forth facts that, if true, establish a colorable claim of ineffective assistance of counsel on appeal under article I, sections 5 and 14 of the Hawai'i Constitution. Maddox has also alleged facts that, if true, raise a colorable claim that trial counsel abandoned his representation of Maddox for the duration

---

[34] Maddox's thirteen remaining questions on certiorari, for which Maddox provides responses, are either waived or without merit. Question 1 incorrectly assumes that our standard of review in this case should be abuse of discretion. See Dan, 76 Hawai'i at 427, 879 P.2d at 532. Question 3 requests this court to resolve the issue of whether the circuit court erred in dismissing the 2007 case without prejudice. However, the propriety of the circuit court's ruling is not properly before this court. Question 4 incorrectly raises a double jeopardy violation based on disciplinary punishment experienced while imprisoned and Maddox's indictment on the same charges in the 2007 and 2009 cases. See State v. Alvey, 67 Hawai'i 49, 50, 678 P.2d 5, 6 (1984) (recognizing that to give collateral estoppel effect to prison disciplinary action would "frustrate the objectives of the criminal justice system"); HRS § 701-110 (1993). Question 5 erroneously challenges Judge Bissen's authority to rule on a criminal matter while sitting as a family court judge. See Adams v. State, 103 Hawai'i 214, 223, 81 P.3d 394, 403 (2003) (affirming the circuit court's finding that a circuit court judge acting as a family court judge retains his or her authority as a circuit judge). Questions 6, 10, and 14 pertain to challenges regarding the 2009 case; however, no appeal was taken from the conviction in that case, nor does Maddox provide any reason why these claims could not have been raised, and thus they are waived under HRPP Rule 40(a)(3). Question 7 incorrectly posits that re-prosecution in the 2009 case was barred by HRS § 701-110(4) (2009). Questions 8, 9, 11, and 12 pose questions, but they do not involve legal claims for relief. Question 13 implies, without merit, that the circuit court lacked jurisdiction in the 2007 and 2009 cases.

of a critical stage of the 2007 case in violation of statutory law and article I, sections 5 and 14 of the Hawaiʻi Constitution.

Because Maddox has presented colorable claims for post-conviction relief, he is entitled to a HRPP Rule 40 evidentiary hearing. Accordingly, the ICA's Judgment on Appeal and the circuit court's Order Denying Petition are vacated, and the case is remanded to the circuit court for a HRPP Rule 40 evidentiary hearing on ground G of the Petition.

Mickey A. Maddox
pro se

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

